## NIELSON et al. v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
March 12, 1928.

No. 5021.

1. **Criminal law ⬅⬌394—Denial of petition by one defendant to suppress evidence held not error as to other defendants.**

Denial of petition by one of defendants to suppress evidence *held* not error as to other defendants as to whom he had no knowledge, connection, or association.

2. **Searches and seizures ⬅⬌7(26)—Rights of defendants having no interest in premises searched are not invaded by search and seizure thereof.**

Rights of defendants charged with conspiracy to violate the National Prohibition Act (27 USCA) and certain revenue statutes are not invaded by search and seizure of premises in which they had no interest, and they are in no position to demand suppression of evidence thereby obtained.

3. **Intoxicating liquors ⬅⬌233(1)—Testimony that liquor found by officers had distinctive flavor identical with liquor previously manufactured by one defendant held admissible.**

In prosecution for conspiracy to violate the National Prohibition Act (27 USCA) and certain revenue statutes, evidence that liquor found on premises occupied by defendants had distinctive flavor identical with that of liquor for which one defendant had been previously convicted *held* admissible for probative value it might have to show that whisky so found was placed there by one of defendants.

4. **Criminal law ⬅⬌369(6)—Testimony that liquor had distinctive flavor identical with that previously manufactured by defendant was not incompetent as tending to show another offense.**

In prosecution for conspiracy to violate the National Prohibition Act (27 USCA) and certain revenue statutes, testimony that liquor found by officers had distinctive flavor identical with that previously manufactured by one defendant *held* not rendered incompetent because it might tend to show that one of defendants had been guilty of another offense.

5. **Criminal law ⬅⬌413(1)—Testimony that defendant had on day previous to raid purchased groceries and fishing tackle and stated he was going fishing held inadmissible as self-serving.**

In prosecution for conspiracy to violate the National Prohibition Act (27 USCA) and certain revenue statutes, testimony that one defendant had the day before the raid by enforcement officers purchased groceries and fishing tackle and stated that he was going fishing *held* inadmissible as self-serving.

6. **Conspiracy ⬅⬌47—Evidence held to sustain conviction for conspiracy to violate prohibition law and certain revenue statutes.**

In prosecution for conspiracy to violate the National Prohibition Act (27 USCA) and certain revenue statutes, evidence *held* sufficient to sustain conviction.

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Dave Nielson and others were convicted for conspiracy to violate the National Prohibition Act and certain revenue statutes, and they bring error. Affirmed.

Lloyd & Croteau, of Tacoma, Wash., for plaintiff in error Dave Nielson.

Stuart H. Elliott, of Tacoma, Wash., for plaintiffs in error. Chas. Nielson and James E. Reece.

Thos. P. Revelle, U. S. Atty., and Arthur E. Simon, Asst. U. S. Atty., both of Seattle, Wash.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge. The plaintiffs in error, together with one Noland Nelson, were charged with conspiracy to violate the National Prohibition Act (27 USCA) and certain revenue statutes of the United States. The charge was dismissed as against Nelson; the others were convicted.

On May 18, 1926, prohibition agents came upon an abandoned lumber camp consisting of a number of shacks or cabins, an open garage, and a barn. In the garage they found a Buick touring car belonging to the defendant Dave Nielson, and a Ford belonging to the defendant Reece, the back seats of both cars being missing. In the barn they found a Chevrolet car belonging to the defendant Charles Nielson. Following fresh tracks from the shacks, the officers struck a well-defined trail through brush and woods, following which a quarter of a mile they came upon a 350-gallon still, and two 1,000-gallon tanks of fermenting corn meal and sugar mash. As they approached, they saw two men flee in one direction and heard the flight of another in a different direction. After destroying the still and tanks, the officers returned to the lumber camp, and they found in one of the shacks evidence that it had been occupied by the defendant Reece. They found his driver's license and his operator's license, and in a coat which hung upon the wall they found his papers and letters. They found also a letter directed to Charles Nielson. In another cabin which had previously been occupied by Noland Nelson they found half a pint of moonshine whisky.

[1, 2] The defendants assign error to the denial of the petition of Noland Nelson, made before he was dismissed from the case, to suppress the evidence of the liquor so found,

and they contend that, although that motion was filed at Nelson's individual instance, it was the duty of the court to exclude and suppress the evidence for all purposes of the case. We find no ground for so holding. The indictment was dismissed as to Nelson obviously for the reason that there was no evidence to implicate him in the conspiracy. Upon the trial he testified as a witness for the government that he had no connection with the other defendants and knew nothing of what they were doing in that vicinity, that he had been occupying one of those cabins off and on for a year or more, that he had left it on May 2, 1926, and returned on May 22, to find that his belongings had been disturbed and the cabin ransacked. There being no evidence tending to connect him with the activities of the defendants or to show that he had knowledge thereof, or was associated with them in any common purpose, there could be no prejudice to their rights in denying his petition to suppress. The prohibition against unreasonable search and seizure is for the benefit of the person whose rights are invaded. The rights of the defendants here were in no way invaded by the search and seizure, and they were in no position to demand suppression of the evidence thus obtained. Chicco v. United States (C. C. A.) 284 F. 434; Graham v. United States (C. C. A.) 15 F.(2d) 740; Rosenberg v. United States (C. C. A.) 15 F.(2d) 179; Cantrell v. United States (C. C. A.) 15 F.(2d) 953.

[3, 4] The evidence tended to show that Nelson's cabin in his absence, had been occupied by one or more of the defendants. Among other things found there, in addition to the pint of whisky, was the back seat of a Ford touring car leaning against the wall. A prohibition agent testified that the whisky so found had a distinctive and peculiar flavor, and that he recognized it as the flavor of liquor which he had twice tasted two years before, and which had been manufactured by Dave Nielson who had pleaded guilty to the making thereof. A motion to strike out that testimony was overruled, the court, while expressly affirming the rule that an accused person could not be convicted of one crime while being tried for another, said to the jury: "All that this evidence is going in for and is allowed to go in for is to show, if the prosecution can show it, that this was whisky of a peculiar sort and origin, as being one of the circumstances in the case; that this liquor is similar to liquor which had theretofore been manufactured by the defendant Dave Nielson." It is insisted that the ruling was error, in that it admitted evidence of a dis-

connected offense to the prejudice of the defendants' rights, and in that the testimony was so inherently improbable that it should have been excluded, and it is argued that, inasmuch as all moonshine liquor has a distinctive flavor, no witness would be able to identify the taste of the liquor taken in the Nelson cabin with that of a liquor tasted elsewhere two years before. As to the incredibility of the testimony, the defendants had their remedy in their argument to the jury, also by calling, if they saw fit, experts to enlighten the jury. We think that the court would not have been justified in assuming as a matter of common knowledge that such testimony was valueless, and that the evidence was admissible for the probative value it might have to show that the whisky found in Nelson's cabin, and which he denied having placed there, was placed there by one of the defendants. If it was admissible for that purpose, it was not rendered incompetent because it might tend to show that one of the defendants had been guilty of another offense. Tucker v. United States (C. C. A.) 224 F. 833; Jones v. United States (C. C. A.) 179 F. 584; Lueders v. United States (C. C. A.) 210 F. 419; Williamson v. United States, 207 U. S. 425, 457, 28 S. Ct. 163, 52 L. Ed. 278.

[5] Error is assigned to the exclusion of testimony proffered to show that on May 17, 1926, the day before the raid on the still, Dave Nielson purchased groceries and fishing tackle and said to a witness that he was going fishing. Such testimony could in no sense be regarded as of the res gestæ, and it was so obviously self-serving that the question of the propriety of excluding it requires no discussion. Anderson v. United States (C. C. A.) 152 F. 87; Staunton v. Goshorn (C. C. A.) 94 F. 52, 61.

[6] There was no request for a directed verdict in favor of the defendants. They nevertheless urge that the evidence was insufficient to sustain their conviction. In view of the fact that the evidence was all circumstantial, we have carefully considered the record, and we reach the conclusion that there was no error in submitting the issues to the jury. The circumstances all tended to indicate that the lumber camp was the headquarters of the operators of the still. Among other facts tending to connect the defendants therewith was the fact that in the bottom of the Ford car and in the bottom of the Chevrolet car the officers found white corn meal of the same kind as that which was found at the still; that the back seats had been removed from two of the cars; that in the Buick car was a

rug on which and on the bottom of the car was found the lint which comes from gunny sacks; that under the seat in the Chevrolet car was found an empty sugar sack bearing the mark "Sea Island Sugar," and alongside were found twelve empty Sea Island sugar sacks covered by an old mattress, which apparently had been recently placed there; that in the sawdust near the car were two imprints made by 5-gallon kegs; that in the brush in the rear of the cabin which Reece occupied was found a sack of sheet copper clippings of the texture and weight of the copper used in making the still, one piece being identified as having been cut from the dome of the still, that a bulldog which the officers had seen at the still came thereafter into the Reece cabin and took his place under the table; that they found in that cabin some fishing tackle and a creel containing from 150 to 200 new corks, such as are used in 5-gallon kegs, also a cooking stove, cooking utensils, food, a bed, and some Sea Island sugar of the kind which they had found in sacks at the still.

The judgment is affirmed.

RUDKIN, Circuit Judge, concurs in the result.